BERNSTEIN AND POISSON
SCOTT L. POISSON, ESQ.
Nevada Bar No.: 10188
JAMIE H. CORCORAN, ESQ.
Nevada Bar No.: 11790
**BERNSTEIN & POISSON**
320 South Jones Blvd.
Las Vegas, Nevada 89107
(702) 256-4566
(702) 256-6280 fax
Jamie@vegashurt.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Margaret A Patton, individually; | 212-cv-02142-GMN-VCF |
| Plaintiff, | |
| vs. | |
| Wal-Mart Stores, Inc.; and DOES 1 through 100; and ROE CORPORATIONS 101 through 200 | |
| Defendants. | |

**PLAINTIFF'S RENEWED OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S UNTIMELY DISCLOSED DAMAGES PURSUANT TO FRCP 37(C)1**

Comes now PLAINTIFF by and through her counsel of record JAMIE H. CORCORAN, ESQ. and SCOTT L. POISSON, ESQ. herby files this Opposition to Defendant's Motion to exclude Plaintiff's untimely disclosed.

-1-

1  This motion is made and based upon the points and authorities attached
2  hereto, and all the pleadings, papers, and files herein.

4  RESPECTFULLY SUBMITTED THIS 30 day of October, 2013

BERNSTEIN AND POISSON

SCOTT POISSON, ESQ.
Nevada Bar No. 10188
JAMIE H. CORCORAN, ESQ.
Nevada Bar No.: 11790
**BERNSTEIN & POISSON**
320 South Jones Blvd.
Las Vegas, Nevada 89107
(702) 256-4566
(702) 256-6280 fax

17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## I. INTRODUCTION

This is a premise liability action, arising from a slip and fall on Defendant's premises on June 11, 2011. Plaintiff was injured as a result of her fall, which to date has required Plaintiff to endure twenty-eight months of therapy and treatment, including a spinal surgery, with nineteen different medical facilities. Plaintiff is still recovering from her surgery and still undergoing treatment related to the incident.

## II. BACKGROUND

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) states that;

"a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

Federal Rule of Civil Procedure 26(e) states:

(1) *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

Beginning January 30, 2013 through June 15, 2013, (the close of discovery) Plaintiff supplemented her 26(f) disclosures four times, and provided two additional supplemental disclosures after the close of discovery. During this

time period, Plaintiff has continued treatment with her treating physicians and medical providers, including her spinal surgeon, Dr. William Smith, who performed a lumbar surgery on Plaintiff on February 20, 2013.

Plaintiff's initial 26(f) disclosures provided to Defendant on January 30, 2013, included records from her spinal surgeon, Dr. William Smith, consisting of dates of treatment; September 29, 2011 through October 15, 2012, which consisted of her entire treatment with Dr. Smith up to that point. (See Initial 26(f) Disclosures attached as Exhibit A)

Plaintiff's initial 26(f) disclosures further listed the person most knowledge at Surgery Center of Southern Nevada as a witness and provided bills and records from the surgery center to defendant relating to Plaintiff's treatment at the facility up until that point. On February 5, 2013, Plaintiff supplemented her 26(f) disclosures providing information related to her upcoming surgery stating;

> "Plaintiff's computation of damages to date includes her above related medical specials and her continued/pending care with her spinal surgeon for medical specials totaling $84,273.70. Plaintiff will incur more medical specials as she schedules her spine surgery." (See first supplement attached as Exhibit B)

Plaintiff followed up with Dr. William Smith on February 20, 2012 where she underwent a posterior lumbar interbody fusion. On April 12, 2013, upon receipt of records from her operation, Plaintiff provided her second supplement to her 26(f) disclosures including; her pre operative appointment with Radar Medical Group, the operative report from the surgical facility (surgery center of Southern Nevada), the billing from her surgeon, Dr. William Smith, and records from

-4-

Prosthetic Center of Excellence for a brace that was required as she recovered from her operation. (See second supplement attached as Exhibit C) In her second supplement plaintiff stated;

> Plaintiff's computation of damages to date includes her above related medical specials for current medical specials in the amount of $130,679.22. **At this time, since Plaintiff is recovering from spinal surgery, it is unknown whether Plaintiff will have any future medical expenses but is expected to incur more medical bills once she begins physical therapy.** (Emphasis added) In addition to the economic losses stated herein, Plaintiff also claims past and future noneconomic damages permitted under Nevada law including physical and mental pain, suffering, anguish, disability, and inconvenience.

In addition to providing updated medical information for her computation of damages, Plaintiff also put Defendant on notice that she would NOT be making a past wage loss claim

> Plaintiff is not making a past wage loss claim. Since Plaintiff is still recovering from spinal surgery, it is unknown whether Plaintiff will have a future wage loss and/or future loss of earning capacity claim.

On June 12, 2013 Plaintiff provided her fourth supplement to her 26(f) disclosures to include Plaintiff's post surgery consultation with her spinal surgeon. (See fourth supplement attached as Exhibit D) Plaintiff further provided Defendant the name and address of Plaintiff's post surgery rehabilitation facility, whose records were not yet available.

On August 6, 2013 Plaintiff provided her 5th supplement to her 26(f) disclosures. Plaintiff's fifth supplement included the one page billing statement

from her previously disclosed medical provider, Surgery Center of Southern Nevada from her surgery. (See billing statement attached as Exhibit E) Plaintiff had previously timely disclosed the operative report from Surgery Center of Southern Nevada on April 12, 2013. (See Operative Report attached as Exhibit F) Plaintiff's fifth supplement also included bills and records from her treatment with her post surgical rehabilitation therapist, and pharmaceutical billing from July 22 – July 24, 2013, (See fifth supplement attached as Exhibit G)

At the time of Plaintiff's 5th supplement, Plaintiff had previously listed Surgery Center of Southern Nevada as a treatment provider, had timely disclosed all the records and bills related to her treatment at the facility prior to her surgery, had provided the surgical operative report from the surgery Center related to her February 20, 2013 surgery, and had provided Defendant with medical authorizations to independently request Plaintiff's medical billings and records. Upon receipt of the additional bill from Surgery Center of Southern Nevada, Plaintiff provided her 5th supplement to Defendant.

Finally, on September 10, 2013 Plaintiff provided her sixth supplement, to include the records and billing associated with her August 28, 2013 appointment with Radar Medical Group (previously listed as a treating provider and witness).

///

///

///

///

///

## III. LEGAL ARGUMENT

Federal Rules of Civil Procedure 37(c)(1), states in pertinent part, that:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The factors that may be used in determine whether a violation of a discovery deadline is justified or harmless are; 1. Prejudice or surprise to the party against whom the evidence is offered, 2. The ability of that party to cure the prejudice, 3. The likelihood of disruption of the trial, and 4. Bad faith or willfulness involved in no timely disclosing the evidence. *Manneh v. Inverness Medical Innovations, Inc.*, 2010 WL 3212129 S.D. Cal. 2010 (quoting *Lanard Toys, Ltd. V. Novelty, Inc.*, 2010 Wl 1452527 at 6 (9th cir 2010)

### A. THERE IS NO PREJUDICE OR SURPRISE ON DEFENDANT

#### 1. DEFENDANT IS NOT PREJUDICED

"Disclosing a computation of damages under Rule 26(a) (1) is necessary for the opposing party to procure responding evidence, such as an expert opinion." *In re Gorilla Companies*, LLC., -B.R. – 2011 WL855788 at 3 (D. Ariz. 2011) citing, *Hoffman v. Const. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008)

Defendant asserts they have been prejudiced by not having the billing from the surgical center, contending that, had they had the billing they would have retained additional experts and would have conducted additional discovery.

Courts have held that, a party is not harmed where, even though an expert disclosure fails to satisfy FED. R. CIV. P. 26, the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert. See *Ricks v. BMEzine.com, L.L.C.*, 727 F.Supp.2d 936, 2010 WL 2985795 (D. Nev. 2010)

Likewise, herein, Defendant was aware throughout the process that plaintiff was surgical and underwent a surgical operation. Because of this knowledge, on April 5, 2013, Defendant had plaintiff undergo an Independent Medical Examination. Defendant's expert completed a report after the medical examination stating;

> "There are not clear indications (based on the information currently available) that, as a result of her fall, the claimant required the recent surgery and other invasive procedures." (See Report attached as Exhibit H)

On June 21, 2013, Defendant provided a supplemental report completed by their retained expert after a further review of records, including all records and notes related to her lumbar surgery; (See Supplemental Report attached as Exhibit I)

///

///

1  1/29/2013 - Patient Questionnaire - Radar Medical Group.

2  1/29/2013 - Lab Results - Clinical Pathology Laboratory.

3  1/29/2013 - X-Ray – Chest - Matt Treinen, D.O.

4  1/29/2013 - ECG Results - Radar Medical Group.

5  2/11/2013 - Exam Notes - Radar Medical Group. These document a diagnosis of lumbar strain and a plan to go ahead with the planned surgery.

6

7  2/19/2013 - History and Physical Notes - Surgery Center of Southern Nevada. The planned surgery was a left sacroiliac joint fusion and L5-S1 posterior interbody fusion, with a laminectomy.

8

9  2/19/2013 - History and Physical - William Smith, M.D.

10  2/20/2013 - Registration Form - Surgery Center of Southern Nevada. The procedure was listed as a left sacroiliac joint fusion and L5-S1 posterior interbody laminectomy, with a facetectomy and foraminotomy.

11

12  2/20/2013 - Patient Questionnaire - Surgery Center of Southern Nevada.

13  2/20/2013 - Lab Request Slip - Surgery Center of Southern Nevada.

14  2/20/2013 - Images of Spine - William Smith, M.D.

15  2/20/2013 - History and Physical -William Smith, M.D.

16  2/20/2013 - Operative Notes - William Smith, M.D. The diagnosis is listed as traumatic sacroiliitis and internal disc disruption.

17

18

19

20

21

22  2/20/2013 - Operative Report -William Smith, M.D. Pre-operative diagnoses and post-operative diagnoses were internal disc disruption, L5-S1; facet arthropathy with facet disruption, L5-S1; traumatic left sacroiliitis. The procedure performed was described as a posterior lumbar interbody fusion at L5-S1, with an OptiMesh bag, a local bone source, bone marrow aspirate through a separate incision for harvesting, continuous neuro monitoring, lumbar foraminotomy at L5, and sacroiliac arthrodesis with implants times three.

23

24

25  2/20/2013 – Discharge Summary -William Smith, M.D.

26  2/20/2013 - Prescription Slips - William Smith, M.D.

27  2/21/2013 - Telephone Encounter - Surgery Center of Southern Nevada West.

28

1   Defendant's expert had the opportunity to review all of Plaintiff's surgical
2   records including the operative report, the patient questionnaire from surgery
3   center of southern Nevada, the registration form from the surgery center of
4   southern Nevada, and records related to a telephone encounter with surgery
5   center of southern Nevada.

6   Based on the review of the records and the previous examination, On July
7   24, 2013, Defendant produced their second supplement (Attached hereto as
8   Exhibit J) to their expert disclosure in which Defendant's expert maintained his
9   previous opinions stating:

Subject / Post Records:

2/11/2013 - Patient Questionnaire - Prosthetic Center of Excellence.

2/12/2013 - 2/20/2013 - Exam Notes - Prosthetic Center of Excellence.

**IMPRESSION:**

The above records do not change the opinions of my prior report. The claimant had very similar symptoms years ago after a work injury in 1999. At that time, the claimant was thought to be exaggerating her complaints.

The above conclusions have been made to a reasonable degree of medical probability and are based on the available records.

On May 3, 2013, Defendant deposed the Plaintiff in this matter in which questions were asked and answered specifically related to her surgery and continued treatment. Further, on June 27, 2013, Defendant deposed Plaintiff's spinal surgeon Dr. Smith. As Defendant had the opportunity to conduct an independent medical examination, retain an expert to dispute the need and relatedness of Plaintiff's surgery, and conduct depositions of plaintiff and her

spinal surgeon, contrary to Defendant's position there is no prejudice to defendant from the inclusion of the supplemental billing and records.

It is unlikely the one page billing statement from surgery center of Southern Nevada would alter Defendant's opinion rendered that the surgery was neither related to the incident nor was it necessary. Should the Defendant wish to allow their expert to produce a 3rd supplemental report based on the additional records Plaintiff would not object.

## 2. DEFENDANT IS NOT SURPRISED

As discussed previously, Plaintiff has continually supplemented her disclosures to Defendant, including putting Defendant on notice of her lumbar surgery before the operation. Further, as Defendant is already aware, Plaintiff is still recovering from her surgery, still experiencing pain, and still undergoing treatment related to the injuries sustained as a result of her slip and fall on Defendant's premises

Defendant had knowledge that Plaintiff required surgery well before any deadlines. Defendant had the opportunity to retain an expert (who reviewed the medical records including her surgical records), had Plaintiff undergo an independent medical examination, had executed medical authorizations, and conducted the depositions of plaintiff and her surgeon. The inclusion of a bill from the surgical center of Nevada (whose records had already been provided) should come as no surprise to Defendant as they already had in their possession the operative report from the surgical facility.

In Defendant's motion, Defendant asserts;

"Additionally, at no time prior to the close of discovery, did Plaintiff provide any damages information to support he doubled future medical expenses claim she surprised Wal-Mart with on August 6, 2013." (MTN pg 8 25-27)

This is an attempt to misconstrue the facts. At issue is Plaintiff's August 6, 2013, disclosure of $116,929.35 related to a single paged bill from the Surgery Center of Southern Nevada, relating to the surgery center's fees for plaintiff's operation. The records and bills from her surgeon, the records and bills from her pre operative clearance, the operative report and records from surgery center of southern Nevada, and the records from her follow up visits to her spinal surgeon had been previously disclosed to Defendant. Further, Plaintiff had received treatment at the Surgery Center of Southern Nevada prior to her surgery, the records and bills which were all properly and timely disclosed to Plaintiff.

Defendants cite to *Baltodano v Wal-Mart* Stores in support of its assertion that Plaintiff's disclosures should be stricken. However, unlike in the case at hand, Plaintiff's computation of damages in *Baltodano* did not contain any information or details about Plaintiff's spinal surgery. Only after the deadline for expert disclosures did Plaintiff provide notice to defendants of Plaintiff's upcoming spinal surgery.

In *Baltodano*, Plaintiff failed to provide any computation of damages related to Plaintiff's $400,000 surgical requirements until after the deadline for expert disclosures. As a result Wal-Mart could not obtain expert testimony regarding the surgery and the relatedness of such, and was unable to conduct an Independent Medical Examination. In the instant case, Plaintiff provided the surgeon's records and bills and operative report and Defendants were able to

obtain an Independent Medical Examination before the deadline to disclose experts.

> "Here, Harris' computation of damages failed to include Baltodano's spinal fusion surgery and led Wal-Mart to believe that no such damages were being sought. Harris' failure to timely disclose the fact that Baltodano was contemplating surgery is neither substantially justified or harmless (*Baltodano* v. *Wal-Mart Stores*, Inc., 2011 U.S. Dist LEXIS 98306 (D. Nev. Aug. 31, 2011)

The court ruled against *Baltodano* because the disclosure was not made sufficiently before the cut off date for expert disclosures to allow Wal-Mart time to conduct needed discovery such as retain experts and conduct an independent medical examination. In the instant case, Plaintiff provided ample notice and documentation of Plaintiff's surgery.

Unlike in *Baltodano*, Defendant was not only on notice of Plaintiff's surgery, but had the records and operative report related to the surgery, had sufficient time to retain an expert to refute Plaintiff's need for the surgery, including preparing two supplemental expert reports, had Plaintiff undergo and Independent medical examination, and had the opportunity to depose Plaintiff and her surgeon.

In the instant case, the surprise to the defendant of the supplemented disclosure(s) is minimal. Defendant was aware that this matter was a surgical case, was aware that the Plaintiff underwent a lumbar surgery on February 20, 2013, and was in receipt of Plaintiff's surgeon's billing, and the operative report

from the surgical center, and had the opportunity to obtain an independent medical examination and depose Plaintiff's surgeon. Plaintiff in no way is attempting to sandbag or surprise the Defendant; to the contrary, Plaintiff has continuously supplemented her disclosures and providing the information available to Defendant.

### B.   ANY POTENTIAL HARM DEFENDANT HAS BEEN CURED

The district court has wide latitude in using its discretion to issue sanctions under FED. R. CIV. P. 37(c)(1). Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

Excluding the billing records associated with the previously disclosed operative report from surgical center of Southern Nevada will cause extreme harm to Plaintiff and is too harsh of a sanction. By supplementing her 26(f) disclosures to include the billing related to the operative report previously provided, Defendant has in its possession everything relating to her surgery, well in excess of trial. If Defendant wishes to retain additional experts based upon the supplemented records including the surgical center billing, Plaintiff would not object. If the Defendant wishes to re-open discovery on damages Plaintiff would not object.

///

///

///

///

///

///

## C. THERE WILL BE NO DISRUPTION TO TRIAL

The crux of the issue at trial regarding damages will be the need of Plaintiff to undergo surgery at all, and the causation and relatedness between her fall and the surgery. Defendant's position (and their retained expert) is that Plaintiff's need for surgery was NOT the result of her fall at Defendant's premises, that Plaintiff had pre-existing injuries, and plaintiff's surgery was not reasonable treatment based upon her injuries.

The inclusion of the surgical center's bill does not alter or change the positions of either side. Plaintiff underwent surgery that Plaintiff asserts is related to the fall. Defendants assert the surgery was neither needed nor resulting from injuries sustained from her fall.

In the instant case, Defendant has retained an expert who completed a total of three reports, all of which in support of the position Plaintiff's surgery was unrelated to the fall.

## D. NO BAD FAITH OR WILLFULLNESS

In *Shakespear v Wal-Mart* cited by defendants, the plaintiff excluded evidence regarding her future surgery and future medical expenses. In that matter Wal-Mart was surprised with the disclosure of $228,000 in future medical expenses related to surgery that would be required. Shakespear had continuously represented to Wal-Mart that she had ceased all medical treatment. On the deadline for disclosing expert witnesses, Shakespear for the first time included claimed future medical expenses.

Moreover, Shakespear had failed to disclose to Wal-Mart the fact that she had retained two experts to opine to the causation of injury, and the

reasonableness and appropriateness of past medical care and expenses. Not only did Shakespear fail to disclose the experts but further failed to disclose that she had underwent an Independent Medical Examination with her retained experts on August 5, 2012, August 22, 2012, and September 5, 2012. After the medical examination, Shakespear made supplemental disclosures on August 14, 2012, September 27, 2012, December 21, 2012, and February 14, 2012, each time stating "she had not retained or specially employed experts to provide expert testimony." The court ruled against Shakespear stating, "Wal-Mart was sandbagged when Plaintiff disclosed opinions about the need for future knee surgery and future medical expenses exceeding $228,000 on the last day to disclose experts."

In *Shakespear*, Wal-Mart was surprised by the disclosure, surprised by the existence of two retained experts that would opine to her need for future surgery, and genuinely prejudiced by Plaintiff's intentional and willful actions.

///

///

///

///

///

///

///

///

///

## IV. CONCLUSION

The late disclosure of the surgical center's bill did not put Defendant on notice that Plaintiff was surgical, Defendant conducted its discovery with the full knowledge that Plaintiff underwent surgery, was aware the surgery center of Southern Nevada performed the surgery, defendant retained an expert and conducted depositions in support of its position that the surgery was unrelated to the fall and ultimately not medically necessary nor related to he incident anyway.

RESPECTFULLY SUBMITTED THIS 30 day of October, 2013

BERNSTEIN AND POISSON

SCOTT POISSON, ESQ.
Nevada Bar No.010188
JAMIE H. CORCORAN, ESQ.
Nevada Bar No.: 11790
**BERNSTEIN & POISSON**
320 South Jones Blvd.
Las Vegas, Nevada 89107
(702) 256-4566
(702) 256-6280 fax

-17-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am over the age of eighteen years and I am an employee of Bernstein and Poisson. On the 30 day of October, 2013, a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PLAINTIFF'S UNTIMELY DISCLOSED DAMAGES** was sent to all interested parties, via CM/ECF addressed below.

PHILLIPS, SPALLAS & ANGSTADT LLC
504 South Ninth Street
Las Vegas, Nevada 89101
(702) 938-1510 (phone)
(702) 938-1511 (fax)
*Attorneys for Defendant
Wal-Mart Stores, Inc.*

_____
An Employee of BERNSTEIN & POISSON